**RUMFORD FALLS POWER COMPANY,**
Petitioner,

v.

**FEDERAL POWER COMMISSION,**
Respondent.

No. 6616.

United States Court of Appeals
First Circuit.

Heard Jan. 3, 1966.

Decided Jan. 28, 1966.

Randall J. LeBoeuf, Jr., New York City, with whom Daniel T. Drummond, Jr., Portland, Me., Alfred E. Froh, Ronald D. Jones, Charles A. Ehren, Jr., New York City, Drummond, Westcott & Woodsum and LeBoeuf, Lamb & Leiby, New York City, were on brief, for petitioner.

Robert A. Jablon, Washington, D. C., Attorney, with whom Richard A. Solomon, Gen. Counsel, Howard E. Wahrenbrock, Solicitor, and Joseph B. Hobbs and Josephine H. Klein, Washington, D. C., Attorneys, were on brief, for respondent.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

ALDRICH, Chief Judge.

Petitioner, Rumford Falls Power Company, a longtime owner and operator of a hydroelectric plant on the Androscoggin River at Rumford, Maine, applied in 1962 to respondent Federal Power Commission

pursuant to the Federal Power Act, 16 U.S.C. §§ 791a–823, for a license to operate, the Androscoggin having been determined to be navigable within the meaning of the Act. Because it had made a substantial addition to its plant subsequent to the 1935 amendment to the Act, petitioner finds itself in the same position as Central Maine Power Co., requiring it to take an antedated license. Central Maine Power Co. v. FPC, 1 Cir., 1965, 345 F.2d 875. This, petitioner accepts. Its petition, brought pursuant to 16 U.S.C. § 825*l*(b) following denial of its request for reconsideration or a hearing, results from the Commission's inclusion in its proposed license of a provision known as Article 31. This provision the petitioner says is unreasonable and beyond the Commission's power.[1]

Commission counsel stated during argument that Article 31 is of recent conception, and is now normal standard procedure for all new licenses. This is, apparently, correct.[2] It follows that if petitioner had filed when it should have done so, no such provision would have been included in its license. In seeking to persuade us, in Central Maine Power Co. v. FPC, supra, that it was fair to antedate Central Maine's license, the Commission pointed out that had that petitioner filed a declaration of intent under the 1935 amendment when it should have done so, it would have received a license bearing the earlier date, which, by coincidence, was demonstrated as a matter of record by another case. We agreed that it would be unfair for the petitioner to be any better off than it would have been had it filed on time. 345 F.2d at 876–877. Now, the shoe is on the other foot. The present petitioner is demonstrably worse off, since in 1954 Article 31 was not written into licenses.

We adhere to the principle that petitioner should not be better off than other applicants who did file properly at the earlier date when petitioner should have filed; i. e., that there must be antedating. We also agree that petitioner should not be better off than other applicants who made timely filing on the date on which petitioner in fact filed. We do not think the Commission should be required to have two present policies as to what should be in licenses currently issued, favoring those whose applications were overdue. To that extent this petitioner loses by its tardiness. However, the Commission cannot penalize the petitioner, because of its delay, by requiring it to accept a provision which could not properly be demanded of applicants presently applying for prospective construction. Nor do we understand it to contend otherwise.[3] At the same time, we agree with the Commission's action refusing petitioner's request for an evidentiary hearing. No adequate grounds were asserted for making it specially exempt from the provisions of Article 31.

For the above reasons, we will consider Article 31 as license "boiler plate," and not with particular reference to any problems peculiar to this petitioner. The article reads as follows:

"*31.* On the application of any person, association, corporation, Federal agency, State or municipality, the Licensee shall, after notice and opportunity for hearing, permit such reasonable use of its reservoirs or other project works or parts thereof as may be ordered by the Commission in the interest of comprehensive development of the waterway or waterways involved and the conservation and utilization of water resources of the region for water sup-

---

1. The Commissioner's memorandum opinion rejecting petitioner's detailed contentions is Rumford Falls Power Co., Project No. 2333. Opinion No. 465, July 12. 1965.

2. See Joint Use of Water Power Project Works or Parts Thereof for Certain Water Supply Purposes, Docket No. R–249.

Order Terminating Proceeding, April 7, 1965, 30 Fed.Reg. 4769.

3. To the extent that remarks in the Commission's brief or oral argument might be thought to suggest that petitioner was handicapped, we believe them either unintended or unauthorized.

ply for steam-electric, irrigation, industrial, municipal or similar purposes, consistent with the primary objective of the project. The Licensee shall receive such reasonable compensation as may be appropriate for use of its reservoirs or other project works or parts thereof for such purposes, any such compensation to be fixed either by Commission approval of an agreement between the Licensee and the party or parties benefiting or by the Commission in the event the parties are unable to agree. Applications shall contain information in sufficient detail to afford a full understanding of the proposed use, including satisfactory evidence that the application [sic] possesses necessary water rights pursuant to applicable State law, or a showing of cause why such evidence cannot be submitted, and a statement as to the relationship of the proposed use to any State or municipal plans or orders which may have been adopted with respect to the use of such waters."

Basic to a consideration of petitioner's contentions is a full understanding of what Article 31 provides. Since we find it less than clear in some respects, we undertake to examine certain clauses in detail.

1. "On the application of any person, association, corporation, Federal agency, State or municipality * * *" (lines 1–2) (hereinafter, applicants). Petitioner contends that this includes applicants who do not "possess necessary water rights pursuant to applicable State law" (lines 23 and 24) because the article permits applicants to show, in the alternative, "why such evidence cannot be submitted." Although petitioner raised this matter in its petition for reconsideration, the Commission responded only indirectly, citing, largely, cases dealing with specific provisions elsewhere in the license, not objected to by petitioner, and expressly authorized. In its brief, Commission counsel state that the clause,

"necessary water rights pursuant to applicable State law," indicates an "intention to harmonize multiple uses in a unified, comprehensive plan." The brief neglects, however, to mention the alternative clause. We note, also, that in the order of April 7, 1965 (fn. 2, supra) the Commission, in speaking of the article, states that "necessary water rights for such non-project purposes must be acquired pursuant to applicable State law. * * *" In spite of these observations, Article 31 may be considered broad enough to constitute the licensee's acceptance of takings, not elsewhere provided for, in favor of applicants not possessing the necessary State rights. Certainly the overall impression created by the article is not one of diffidence on the part of the Commission, and certainly, too, in some respects, the Act does permit takings in favor of parties not possessing state property rights.

2. "* * * utilization of water resources of the region for water supply for steam-electric, irrigation, industrial, municipal or similar purposes. * * *" Petitioner suggests that this clause is broad enough to include private, nonmunicipal uses. The Commission does not respond. Petitioner's apprehension has seeming merit. As opposed to it, however, this clause appears to have been derived from section 10(a) of the Act, 16 U.S.C. § 803(a), which would appear to limit the Commission's power to "beneficial *public* uses." (Italics ours.)

3. "* * * consistent with the primary objective of the project." This is, perhaps, the nub of petitioner's concern. Although it is not clear what might be considered "secondary" objectives, and the Commission's memorandum opinion fails to identify the primary one, its brief is replete with assertions that the primary objective is the manufacture of power. This we accept. The brief is equally replete with assurances that the Commission can do nothing under Article 31 which could in any way diminish petitioner's use (which we take to mean at maximum capacity) of its generating ma-

chinery.[4] This construction is considerably more restricted than we would, with full confidence, be willing to read into the phrase "consistent with the primary objective of the project." Certainly one explanatory clause in the article, or one sentence in its opinion, would be worth more than six in the brief.[5] In its absence we do not know whether the Commission, acting under Article 31, would be limited absolutely, or limited only to what it might determine to be reasonable consistency.

4. "The Licensee shall receive such reasonable compensation as shall be appropriate. * * *" What the standard of appropriateness is, is in no way indicated. While under other circumstances the term "present fair value" might be inferred, no particular inference seems warranted in a milieu where, for at least some purposes, a licensee is required to evaluate its property on the basis of written down cost. Federal Power Act § 14, 16 U.S.C. § 807. We do not find it unambiguously apparent that for a taking for the benefit of someone applying under Article 31 the licensee is to be compensated on the basis of a Commission-supervised condemnation proceeding. Rather, it would seem that the licensee might receive what is reasonable in the opinion of the then members of the Commission, subject to court review on a standard not presently known to the court.[6]

A fundamental objection which petitioner raises to Article 31 is that it unsettles its license, where Congress intended that it be secure;[7] that it does not know what it may have to surrender, or to what extent it will be compensated. Being uncertain as to the proper interpretation of the article, we find it peculiarly difficult, as, indeed, must peti-

---

4. "Contrary to its expressed fears, petitioner is not subjected by Article 31 to any threat or danger of revocation or restriction of the right granted by the license, i.e., the right to continue to operate the hydroelectric project fully described in the license." (Br. 5)

"Article 31 does not provide for future authorization of uses inconsistent with petitioner's maintenance and operation of the generating and transmission facilities of its project." (Br. 5)

"Article 31 poses no threat to petitioner's generation of power. * * *" (Br. 6)

"By its present licensing order, the Commission has given petitioner the assured right to generate the power authorized through the year 1993. * * *" (Br. 10–11)

"As previously shown * * *, Article 31 does not provide for the Commission's permitting use of the project works in a manner inconsistent with petitioner's generating and transmitting power as it has heretofore." (Br. 11–12)

"Having been granted the stability of the right to generate power at least through 1993. * * *" (Br. 12)

5. This court recalls vividly the disclaimer which another administrative body subsequently expressed of interpretations of its language made by its counsel appearing before us. See Colgate-Palmolive Co. v. FTC, 1 Cir., 1963, 326 F.2d 517, 519 fn.

4, rev'd on other grounds, FTC v. Colgate-Palmolive Co., 1965, 380 U.S. 374, 85 S.Ct. 1035, 13 L.Ed.2d 904. We cannot, of course, criticize an administrative body for this.

6. Parenthetically, it does not affirmatively appear that petitioner is entitled to a Commission hearing for the compensation determination. The article provides for a hearing (line 4) when the application is made. It is then provided that a successful applicant may agree with the licensee as to compensation (lines 17 and 18); otherwise compensation shall be fixed by the Commission (lines 19 and 20). The words "after hearing" do not here appear. This, very possibly, is but a criticism of draftsmanship.

7. For example, section 10(a), 16 U.S.C. § 803(a), grants to the Commission the "authority to require the modification of any project and of the plans and specifications of the project works before approval." Petitioner contends that insofar as Article 31 permits a taking in any way detrimental to the project, beyond that permitted by specific provisions in the Act and duly reflected in other articles in the proffered license, it would be a modification of the project *after* approval. The force of this not implausible contention must depend upon the extent of the additional powers the Commission has reserved to itself under this article.

tioner, to deal with this issue. It is regrettable, particularly in view of the general importance which the Commission itself attaches to the article, that it saw fit to answer the substantial points [8] that petitioner raised in its initial petition by, essentially, an assertion that the article is within its powers and in the public interest.[9]

We find ourselves unable to give proper consideration to the article when we are in doubt as to what it means. Accordingly, we remand the case to the Commission for clarification, either by a revision of the article itself, or by way of an opinion responsive to the questions we have raised herein.

J. Joseph Smith, Circuit Judge, dissented.

---

**8.** We must agree with the Commission that some do not seem substantial.

**9.** The Commission also stated that it would be time enough to determine in the future when some matter arose whether petitioner was hurt. In the context made, namely, that petitioner had not shown grounds for special relief from a standard provision, we might agree. This statement has been escalated by Commission counsel, however, to suggest in the brief (fn. 9) that there is no present controversy, and that petitioner should not be here. Rarely have we seen a more specious contention. If the Commission by Article 31 reserves something which, without it, was not reserved, the fact, as here appears, that it is not presently threatening or seeking to exercise rights thereunder, does not mean that petitioner is not presently affected. The difference between receiving a license without a reserved right and having to take one with a reserved right is a present difference. Not only do we find counsel's suggestion surprising, but the Commission itself has answered it in its order of April 7, 1965 (fn. 2, supra) where it observed that this article could not be incorporated into licenses already issued.